H. G. Seeligson and Nadine J. Seeligson v. Commissioner.
H. G. Seeligson v. Commissioner
Docket No. 33385.
United States Tax Court
1953 Tax Ct. Memo LEXIS 134; 12 T.C.M. (CCH) 970; T.C.M. (RIA) 53300; August 28, 1953
L. Warren Baker, C.P.A., 1004 Mercantile Bank Building, Dallas, Tex., for the petitioners. Frank C. Allen, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined a deficiency in income tax against the petitioners for the taxable year 1948 in the amount of $136.04. The deficiency results from the disallowance of a capital loss carry-over from 1946. The sole question for determination is whether petitioner H. G. Seeligson in 1946 made a sale of stock which resulted in a short-term capital loss. Findings *135 of Fact Petitioners are husband and wife, and reside in Dallas, Texas. They filed a joint income tax return for the taxable year 1948 with the collector of internal revenue for the first district of Texas. H. G. Seeligson will sometimes be referred to as petitioner. During the early part of 1946, petitioner became interested, through conversations with Raymond B. Holbrook and Bruce Collier, in forming a corporation to publish a weekly news magazine. The corporation was incorporated on June 24, 1946, under the name Texas Week, Inc., and thereafter during the period of its existence engaged in the publication of a weekly magazine known as "Texas Week." Petitioner was one of the incorporators and one of the original subscribers to the stock of the corporation, and during the month of June 1946 he acquired 616 shares of its stock, at a cost of $6,160. Petitioner was president of the corporation and business manager of the magazine from the date of incorporation until September 1946. Holbrook was secretary of the corporation and editor and publisher of the magazine from the date of incorporation until September 1946, and from that date until the corporation ceased to exist, was president. *136 For the period of time he was associated with the corporation the petitioner worked with Holbrook in the publication of the magazine. In his capacity as president and business manager petitioner handled the affairs of the corporation and was familiar with its financial condition. The advertising revenues of the corporation were not sufficient to support its operation, and in August of 1946, petitioner decided that further operations would be unsuccessful without a considerable amount of capital, much more than he chose to invest. Thereupon he attempted to persuade Holbrook to join him in dissolving the corporation and terminating the business, but Holbrook did not agree to this plan; he thought the magazine and corporation had possibilities of ultimate success. Petitioner then entered into a transaction with Holbrook whereby Holbrook was to receive petitioner's 616 shares of stock and an unstated quantity of his children's stock in Texas Week, Inc., for one dollar. The transaction was subject to certain conditions, two of which were that if the corporation did succeed petitioner should be permitted to participate in the dividends and if Holbrook should sell the stock he would pay *137 petitioner fifty per cent of the proceeds from such sale in excess of one dollar. Petitioner did not attempt to sell, assign or release this stock to anyone but Holbrook. The book value of the stock at the time of the transaction was $1.85 a share. From its incorporation on June 24, 1946, through August 31, 1946, the corporation operated at a loss of $20,353.45. During its first fiscal year ending May 31, 1947, the corporation operated at a loss of $65,408.10. In their income tax return for 1946, petitioners reported $6,159 as a short-term capital loss on the sale of Texas Week stock and a short-term capital loss of $60.58 from other sources. They reported a net long-term capital gain of $138.90 for that year, and an excess of short-term capital loss over long-term capital gain as $6,080.68. Of that amount, they deducted $2,000 as capital loss on separate community income tax returns for 1946, and $2,000 of the remaining $4,080.68 in 1947 as a capital net loss carry-over from 1946. Of the $2,080.68 balance remaining thereafter, they deducted $1,000 in their joint return for 1948. In his determination of the deficiency herein, the respondent determined there was no net capital *138 loss to carry forward to 1948, and disallowed the above $1,000 claimed by petitioners in their return. Opinion In computing a net capital loss under section 117 (b) of the Internal Revenue Code, [1]100 per centum of the loss sustained upon the sale or exchange of a capital asset is to be taken into account if the asset, when sold or exchanged, was held for less than six months. If the asset was held for more than six months, only 50 per centum of the loss is to be taken into account. In section 23 (g) of the Code, [2] it is provided that if shares of corporate stock, which are capital assets, become worthless during the taxable year, the loss resulting therefrom is to be "considered as a loss from the sale or exchange, on the last day of such taxable year, of capital assets." The question accordingly is whether petitioner sustained a loss by reason of a sale, on or about August 29, 1946, of his stock in Texas Week, Inc. If so, the loss was a shortterm capital loss and 100 per centum thereof is to be taken into account in computing his net capital loss. And in such circumstances, he would have the claimed net capital loss to carry forward to 1948. *139 On the facts here, it is apparent, we think, that petitioner did not in the transaction on or about August 29, 1946, nor in any other transaction occurring in 1946, make a final and complete disposition of his shares of stock in Texas Week, Inc., by sale or exchange. According to the terms of the transaction, petitioner did make a transfer of the shares of stock in question, in consideration for the payment to him of one dollar. In making the transfer, however, petitioner reserved the right to one half of any dividends Holbrook might thereafter receive on the said stock, and in the event of subsequent sale of the stock, Holbrook was to pay over to petitioner fifty per cent of the proceeds. It is thus apparent that however the transaction in question may be described, it was not a final and completed disposition of the shares by petitioner. We are accordingly unable to find that there was a sale or exchange of the shares by petitioner in 1946, which is a prerequisite to the allowance of the loss as claimed. It may well be that petitioner did sustain a loss in 1946 for the reason that the shares of stock in question became worthless in that year. If so, under the provisions of section *140 23 (g), supra, the loss is to be treated, for tax purposes, as if it had resulted from a sale of the shares on the last day of 1946. In such case, the sale would have occurred more than six months after the shares were acquired, and the loss was a long-term loss, only 50 per centum of which could be taken into account in computing petitioner's net capital loss thereon. A net capital loss so computed would be absorbed prior to 1948, the taxable year herein, as respondent has determined, leaving no loss to be carried forward to 1948. Decision will be entered for the respondent. Footnotes
1. SEC. 117. CAPITAL GAINS AND LOSSES. * * *
(b) Percentage Taken into Account. - In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net capital gain, net capital loss, and net income: 100 per centum if the capital asset has been held for not more than 6 months; 50 per centum if the capital asset has been held for more than 6 months. ↩
2. SEC. 23. DEDUCTIONS FROM GROSS INCOME. * * *
(g) Capital Losses. - (1) Limitation. - Losses from sales or exchanges of capital assets shall be allowed only to the extent provided in section 117. (2) Securities Becoming Worthless. - If any securities (as defined in paragraph (3) of this subsection) become worthless during the taxable year and are capital assets, the loss resulting therefrom shall, for the purposes of this chapter, be considered as a loss from the sale or exchange, on the last day of such taxable year, of capital assets. (3) Definition of Securities - As used in paragraph (2) of this subsection the term "securities" means (A) shares of stock in a corporation, and (B) rights to subscribe for or to receive such shares.↩